THE STATE vs. PUGH.

An indictment on the statute prohibiting the torture of animals, (Rev. Stat. 406,) charging the mere act of tying brush or boards to the tail of a horse, unaccompanied with averments declaring the effects of the act, is insufficient. Such act does not necessarily produce torture.

## APPEAL from Newton Circuit Court.

EDWARDS, for appellant.

The offence charged against the appellant (Pugh) in the indictment, is not an offence punishable criminally, either at common law or under the statute. The charge is, that he tortured the horses of the prosecutor by tying brush and boards to the tails of the horses. There is no allegation that any damage or injury was done, but the simple act of tying brush and boards to the tails of the horses is relied upon as constituting the torture spoken of in the statute. The act complained of can hardly be construed as a torture within the legal definition of the word. Torture, as known to the English law, was one of the most severe punishments known to or inflicted by that law upon criminals. The word has since grown into common use, and means severe, cruel, or unusual punishment. It is submitted, that the legislature, in providing for the punishment of torture of beasts, meant to provide for punishing such as were guilty of cruel and inhuman conduct to them, and not every slight injury that might be done. The tying of boards or brush to the tails of horses, (although not to be approved) is not of itself a torture. It may, in fact and in truth, do no harm. It might amount to torture under certain circumstances. If it did, then it should be so made to appear by proper averments in the indictment. Unless this is done, the indictment is clearly bad. In this case, there is nothing charged against the defendant constituting an offence by the law of the land, and he should have been discharged.

There being nothing criminal in the offence charged in the indictment, the circuit court erred in overruling the defendant's demurrer, and in refusing to arrest the judgment against him. Rev. Code, 1845, page 406, sec. 38.

33

The State vs, Pugh.

GARDENHIRE, Attorney General, for the State.

The indictment is founded on the 38th sec. of the 8th article of the act concerning crimes and punishments. R. S. 406, and I see no objection to it.

Ryland, J., delivered the opinion of the court.

The defendant, James Pugh, jr., was indicted by the grand jury of Newton county, at the May term of the circuit court, in the year eighteen hundred and fifty-one, for unlawfully, maliciously, and cruelly torturing the horses of one Samuel Hearrell.

The defendant appeared to the indictment at the November term following of said court, and moved to quash the indictment for want of a prosecutor's name endorsed thereon. This motion was overruled, and I find it was properly overruled, as the record shows the fact to be that said Hearrell acknowledged himself, by endorsing the indictment, to be the prosecutor thereof.

The defendant then filed his demurrer to the indictment, which, upon consideration of the court, was overruled, and the indictment declared sufficient. The defendant being called upon to plead to the indictment, stood mute, and the court had the plea of not guilty entered for the defendant. On this plea a trial was had; the jury found the defendant guilty, and assessed his fine to one dollar.

The defendant then moved the court to arrest the judgment for the insufficiency of the indictment; this motion being overruled, he excepted, filed his bill of exceptions, and prayed an appeal to this court.

The question before us, then, is in relation to the sufficiency of the indictment.

The indictment is found under the provisions of our statute concerning "Crimes and Punishments," art. VIII, sec. 38, which is in these words: "Every person who shall maliciously and cruelly maim, beat or torture any horse, ox or other cattle, whether belonging to himself or another, shall, on conviction, be adjudged guilty of a misdemeanor, and fined not exceeding fifty dollars."

The indictment charges that the defendant did "unlawfully, maliciously and cruelly torture the horses of one Samuel Hearrell, to wit: one sorrel mare; of the value of forty dollars; one clay bank horse, a gelding, of the value of sixty dollars; one bay filly, of the value of twenty-five dollars, by then and there *tying brush* and *boards* to the tails of said horses, and other wrongs to the said horses, he, the said James Pugh,

jr., then and there did, to the great injury of said horses, and to the great damage of the said Samuel Hearrell, contrary," &c.

From this indictment, the torture is charged to consist in the act of *tying brush and boards to the tails* of the animals. We do not consider this wanton and very reprehensible act of itself, to come within the meaning of this section. This may be done for all we can see, and yet produce no torture to the horses. The circumstances accompanying the act, the consequences produced by the act may have been the means of much pain and torture to the animals; and if so, there should have been proper averments in the indictment.

A boy may tie a brush to the tail of a horse, and it may not produce even fear or cause any alarm to the animal, or it may occasion so much alarm and cause such efforts on the part of the animal to escape from it, as may indicate great suffering and pain. In all acts of this character, the means of producing the torture must be averred, and the courts must see that such means have the inevitable and natural tendency to produce the effect in which the criminal charge consists. Torture is defined to be : 1. Torments, judicially inflicted; pain by which guilt is punished or confession extorted : 2. Pain, anguish, pang.—Dr. Johnson. Webster defines it to be : 1. Extreme pain, anguish of body or mind; pang, agony, torment.

The torture here alluded to must consist in some violent, wanton and cruel act necessarily producing pain and suffering to the animal. Now it is manifest, that from tying a brush or board to the tail of a horse, different effects may follow from the circumstances accompanying the act, as well as from the manner and place in which the act is done, or from the nature and qualities of the animal. A fiery, high-mettled and wild horse, may kill himself in order to escape from the troublesome and frightful appendage to his tail. A gentle, faithful old farm horse, with more hard sense than the mischievous lad who sought to frighten him, may not mind the brush or board; but may carry it to his owner to have it taken off without suffering a fatigue.

Suppose the tying had been in a stable, so that the animals could not have had room to run or to hurt themselves, this could not have been the torture provided in our statute; therefore, the mere act of tying brush or boards to the tail of a horse, unaccompanied with averments declaring the effects of the act, could never have been in the minds of the framers of this statute.

I am satisfied, upon a full consideration of the subject, that the indictment in this case is too defective, too loose and vague to support the judgment rendered upon it. This being the opinion of the other judges, the judgment below is reversed.